352 So.2d 446 (1977)
Royce Maynard KEMP
v.
STATE of Mississippi.
No. 50093.
Supreme Court of Mississippi.
November 16, 1977.
Rehearing Denied December 14, 1977.
*447 Smith, Downs, Coleman & Ross, Wendell H. Trapp, Jr., David L. Coleman, Corinth, for appellant.
A.F. Summer, Atty. Gen., by Scherry J. LeSieur, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, WALKER and BROOM, JJ.
BROOM, Justice, for the Court:
Murder conviction and life sentence resulted from trial of Kemp (appellant) in the Circuit Court of Alcorn County. We affirm.
Rarely, if ever, are courts presented a case in which the accused is charged with the murder of his own mother, but this is such a case. The facts show that on February 18, 1976, appellant (using a pistol) shot and killed his mother, Flossie Beatrice Kemp. Appellant was at his parents' home in Corinth, and on the date of the murder he arose from bed and spent a large part of the day drinking beer. Some of the testimony indicates that he drank as much as a case or a case and a half of beer, plus an unknown quantity of whiskey. When the appellant's mother came home from work about the middle of the afternoon, she found that her son, the appellant, was heavily drinking. Appellant's father and brother-in-law testified that appellant went into the kitchen of his parents' home, and that they heard him arguing with his mother in the kitchen. Appellant left and armed himself with the pistol. A few minutes later, at about 7:00 p.m., he returned with the pistol, after which four or five shots were heard. Law officers were called and upon arrival found the appellant's mother shot in the face and neck  lying on the kitchen floor dead.
The first argument made by appellant is that he was deprived of a fair trial because a juror, Calvary, failed to disclose that she was a niece of a witness for the prosecution, Deputy Sheriff Mayhall. We find no error in this aspect of the case because defense counsel did not ask prospective jurors about any relationship to law enforcement officials except the question as to whether or not they had ever been married to a law enforcement officer. Additionally, the prospective jurors were asked if they were "related to someone who will be testifying in this cause, that you know of?" The record does not show, neither is it charged, that the juror in question, Calvary, knew that her relative (uncle by marriage) was a law officer or that he would testify. Absent any showing or charge that juror Calvary knew that her relative was an officer or would testify in the case, we find no reversible error in the record as to this proposition.
Next it is argued that the case should be reversed because the lower court admitted into evidence a colored photograph of the victim lying dead on the kitchen floor. While the photograph is gruesome, we note that the prosecution did not exploit admission of the photograph. No other photograph of the victim was admitted. Considered in combination with other photographs of the kitchen, the photograph portrays both the position of the victim in relationship to the projectile found in the room, and the markings made by other projectiles on the walls and ceiling. This is significant, especially when considered in connection with testimony of appellant's wife, who testified that the gunshots fired by the appellant were not directed at any specific point, but sprayed all over the *448 room. We conclude that the photograph served a legitimate evidentiary purpose and that the trial judge acted within his sound discretion in admitting it before the jury.
Next, it is argued that certain statements made by appellant were improperly admitted into evidence. While Officer Mayhall was arresting appellant, and as appellant walked toward Mayhall, appellant asked: "How is my mama?" After he was arrested the appellant asked several similar questions. These questions asked by the appellant were admissible because they were voluntary statements made by him at a time when he was not under interrogation. Appellant also contends that the court erred in admitting into evidence a statement given by appellant at the Alcorn County jail. He says that at the time the statement was given, he was intoxicated and not competent to waive his rights. Testimony of the law officers was that although the appellant had been drinking heavily, he was in control of his faculties, justifying the finding of the lower court that appellant was aware of his rights, that his rights were properly explained to him, and that he knowingly and willingly waived those rights and agreed to make the statement which went to the jury. Our view of the record is that the trial court was justified in finding from the evidence that appellant's confession was freely and voluntarily given.
Final argument is that the conviction of appellant was against the overwhelming weight of the evidence and that the state failed to prove intent. Although the appellant testified that he was so drunk that he could not recall shooting his mother, he could recall a great deal about what he did during the day. His brother-in-law, Spears, testified that on the day of the killing, appellant offered him (Spears) $1,000, a gun, and a deed to certain real estate as an inducement for Spears to shoot the deceased. As held in Berry v. State, 288 So.2d 457 (Miss. 1974), voluntary intoxication is a defense only when such intoxication exists to the extent that it "renders an accused incapable of forming the necessary intent to commit the crime charged and incapable of knowing right from wrong." Other cases hold that intoxication must produce "mania" to be a defense. State v. Williams, 208 So.2d 172 (Miss. 1968). Berry further held that where the evidence creates an issue of fact, its resolution is for the jury; such was the case here, and the jury resolved in favor of the state. The jury was fully instructed on the matter of intent and we find that the record demonstrates evidence sufficient to support the jury's verdict.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.