511 So.2d 1360 (1987)
L.V. JOHNSON
v.
STATE of Mississippi.
No. 56964.
Supreme Court of Mississippi.
August 5, 1987.
*1361 George S. Monroe, B. Jackson Thames, Jr., Newton, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by H.M. Ray, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Excessive consumption of alcohol and other drugs has long been a source of man's inhumanity to man. Today's case is but another anecdote to the sad truth of that fact, for here we find a young man in his mid-twenties, after "drinking and smoking dope," brutally attacking and raping a 76 year old widow who lived alone.
Notwithstanding our disgust at Defendant's conduct, we have dispassionately reviewed each assignment of error he has *1362 tendered. Each refers to a matter where the trial court either acted correctly or well within its discretionary authority. We affirm the conviction of rape and sentence of life imprisonment without eligibility for parole, for Defendant has been shown an habitual offender.

II.

A.
In July of 1985 Mrs. Eddie Lee Eubanks, a widow, lived alone in Philadelphia, Mississippi. At approximately 3:00 a.m. on Sunday morning, July 7, 1985, Eubanks awoke to go to the bathroom. When she returned to her bed, she discovered a man in bed with her who held a knife to her throat and raped her. Her attacker then instructed her to take him to any money she had. He took money from a coin purse in the kitchen and took a piggy bank from the living room. When Eubanks led him to her guest bedroom after he had inquired about a purse she always carried, the man raped her again.[1] Finally, the attacker got Eubanks' butcher knife, ordered her to open her door for him to leave, and threatened to come back and kill her if she screamed. He left with her two telephones, purse, butcher knife, flashlight, and piggy bank.
After her assailant's departure, Eubanks put on some clothing, crawled and walked first to the house of a neighbor whom she was unable to awaken, and finally went to the home of another neighbor who took Eubanks back to her own home and called the police. After the police arrived at the scene of the crime at about 5:00 a.m., the neighbor then took Eubanks to the hospital. Although Eubanks returned to her home after being examined by a doctor, at approximately 8:00 a.m. she returned to the hospital again because she had begun hemorrhaging. At approximately 8:45 a.m. a doctor surgically repaired lacerations in her posterior vaginal wall and in her cervix. Eubanks remained in the hospital for several days thereafter.
On that July 7, 1985, at approximately 2:00 a.m.  about one hour before the rape  Bonny Wilson and girlfriend Deborah Boler had discovered L.V. Johnson in their house, which is about four or five blocks south of the Eubanks residence. After ordering Johnson out of their home, Wilson and Boler, at approximately 2:45 a.m. while proceeding to the police station, observed Johnson in the vicinity of Eubanks' residence. At the police department Wilson and Boler reported Johnson for breaking and entering their premises. However, at this time the police did nothing because they did not wish to awaken the judge for signing of a warrant.
At approximately 12:30 p.m. on July 7, 1985, in Meridian, Mississippi, L.V. Johnson was taken into custody pursuant to a warrant for breaking and entering Bonny Wilson's residence. Johnson was returned by police car to Philadelphia, Mississippi, where he was apparently taken to the hospital for a "rape suspect" examination, though when this hospital visit occurred is in conflict. Johnson was not questioned until some twenty-four hours later, at approximately 1:00 p.m. of the next day, July 8, 1985, because Johnson was not "at hisself;" he appeared to be "under the influence of something."
At this questioning about the rape, according to police, Johnson signed a statement in which he acknowledged and waived his Miranda rights. He next slammed his hand on the table and stated "I'm your man... . I'm ready to make a statement... . I don't want a lawyer." According to police Johnson then gave a signed statement admitting his guilt. When confronted with the above police testimony at trial, Defendant Johnson rose from his chair, called the testifying police investigator a "lying son of a bitch," and fell to the floor in an apparent faint.
This confession included not only admission of the rape but also a statement that Johnson had gone into another house earlier in the night. At trial, after a hearing out of the presence of the jury, the reference to this "other crime" of breaking and entering was deleted from the confession. However, the confession in its entirety was *1363 later at the end of trial allowed to go to the jury because Defendant Johnson himself injected testimony concerning the crime of breaking and entering Wilson's home.
Apparently the police rested their case on Johnson's confession. No fingerprints were taken at the scene of the crime, the police never attempted to search L.V. Johnson's home, the rape kit apparently was never retrieved from the Mississippi Crime Lab, and the victim was never given an opportunity to identify Appellant Johnson  either in a line-up or by photograph.

B.
On September 17, 1985, the Grand Jury for Neshoba County returned an indictment charging Johnson with the crime of rape. Miss. Code Ann. § 97-3-65(2) (Supp. 1985). Johnson was also charged as a recidivist within Miss. Code Ann. § 99-19-81 (1972). The matter was called for trial in Circuit Court on October 2, 1985. On the following day the jury returned a verdict as follows:
We, the Jury, find the Defendant, L.V. Johnson, guilty as charged and unanimously agree to fix his punishment at imprisonment for life.
Thereafter, the Circuit Court heard the prosecution's charge that Johnson be sentenced as a habitual offender. Evidence was presented establishing that Johnson had been convicted on a charge of armed robbery in the Circuit Court of Neshoba County on February 21, 1978, that he had been convicted on a charge of forgery in the Circuit Court of Neshoba County on September 29, 1983, and that on the same date he had been convicted of a crime of grand larceny in the same court. Thereafter, the Circuit Court sentenced Johnson to life imprisonment without eligibility for parole, probation, suspension or reduction of sentence. Miss. Code Ann. § 99-19-81 (1972).
On October 4, 1985, Johnson filed his motion for a new trial asserting numerous errors in the trial proceedings. On the same date the matter was taken up and considered by the Circuit Court and an order was thereupon entered overruling and denying the motion. This appeal has followed.

III.
Johnson first assigns as error the Circuit Court's refusal to order a change of venue. The matter was presented at a pre-trial hearing held on September 26, 1985. Each side presented the testimony of four witnesses. In the end the motion for change of venue was denied.
Counsel for Johnson points out that upon recross-examination of one of the State's witnesses, tax assessor for Neshoba County admitted that a rape of a 76-year-old white female by a 24-year-old black male could very well be the type of case that would subject the accused to an unfair trial by a partial jury. Also State's witness Stanley Dearman, owner and editor of the Neshoba Democrat Newspaper, admitted upon cross-examination that such a crime would be "a volatile sort of thing that people would have strong feelings about."
Current change of venue jurisprudence in this state directs "that a motion for change of venue ordinarily should be granted where, under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused's right to a fair trial may be lost. Fisher v. State, 481 So.2d 203, 220 (Miss. 1985); see also Weeks v. State, 493 So.2d 1280, 1287 (Miss. 1986); Cabello v. State, 490 So.2d 852, 854 (Miss. 1986); Wiley v. State, 484 So.2d 339, 343 (Miss. 1986); Johnson v. State, 476 So.2d 1195 (Miss. 1985).
We have carefully reviewed the evidence considered by the Circuit Court in connection with the motion for change of venue. Without question the evidence was qualitatively and quantitatively far less persuasive than that found in Fisher and Johnson sufficient to mandate reversal on this ground. We accord the Circuit Court a certain amount of discretion in considering requests for change of venue. Here the evidence was not such that we may hold that the Court abused its discretion in denying the motion. The assignment of error is denied.

*1364 IV.
Johnson assigns as error the Circuit Court's refusal to grant his motion for a continuance. The grounds upon which Johnson sought a continuance was the absence of one Phillip Coleman who, according to Johnson, would have been an alibi witness. Johnson says that Coleman would have testified that Johnson was at Coleman's house when the rape occurred.
The record reflects that four separate subpoenas had been issued for Phillip Coleman. He could not be found, although he was a resident of Philadelphia, Mississippi, and quite possibly subject to the jurisdiction of the Circuit Court.
Johnson argues that, because of Coleman's residence in Neshoba County, it would be reasonable to expect that with a little patience and perseverance he could be found and subpoenaed. The prosecution responds, however, that Coleman was wanted for questioning in drug cases and that it was not at all reasonable to expect him to return.
Under the circumstances, and with the agreement of the district attorney, the Circuit Court instructed the jury as follows:
The Defendant, through his attorney, has announced he would call as a witness one Phillip Coleman, and if Phillip Coleman was present, he would testify that L.V. Johnson was at his house with him at the time and on the night of the rape of Mrs. Eubanks. That testimony is in addition to what you have heard and you may consider that with all the other testimony you have heard in this case.
This instruction was given the jury prior to Johnson's resting his case. Counsel for Johnson interposed no objection to this statement.
We have frequently held that the question whether a continuance should be granted is a matter committed to the sound discretion of the trial court. In Parham v. State, 229 So.2d 582 (Miss. 1969), for example, we stated:
The issue as to whether or not a continuance should be allowed is largely within the sound discretion of the trial judge ... and this Court will not reverse a case because of the refusal of the court to grant a continuance unless it appears that the judge has abused his discretion. [cites omitted] Moreover, unless this Court is satisfied that an injustice is done by the refusal to continue the case, we will not reverse the judgment for retrial.
Parham v. State, 229 So.2d 582, 584 (Miss. 1969). See also Fermo v. State, 370 So.2d 930 (Miss. 1979); McClendon v. State, 335 So.2d 887 (Miss. 1976).
By reference to these facts, and particularly in light of the instruction given the jury by the Circuit Court, we are unable to conclude that the Circuit Court abused its discretion in the premises. The assignment of error is denied.

V.
Johnson next argues that the Circuit Court erred in overruling his objections to the admission of his pre-trial statement, in the nature of a confession. He refers here to the statement made to police to the effect that "I'm your man ... I'm ready to make a statement... . I don't want a lawyer," followed by a signed written statement admitting his guilt to the offense. Essentially, Johnson argues that he was on a binge of alcohol and drugs which covered July 6, 1985, through July 8, 1985. The rape occurred in the early morning hours of July 7, 1985. Johnson was arrested at 12:30 p.m. on July 7  some twelve hours after the rape. He was not questioned, however, until some twenty-four hours later  at approximately 1:00 p.m. on July 8, 1985.
The record reflects that the Circuit Court inquired extensively into the voluntariness of the confession and specifically, into Johnson's mental state at the time the confession was given. At the conclusion of this hearing, the Circuit Court expressly found that the confession "was freely and voluntarily given, and knowingly done so ... and that there was no coercion or intimidation ..." of Johnson. The court expressly found as a fact that the confession was not given "under the influence of intoxicants."
*1365 We have repeatedly held that the voluntariness of a waiver, or of a confession, must be determined by the trial judge from the totality of the circumstances; it is a factual inquiry. Gavin v. State, 473 So.2d 952, 954-55 (Miss. 1985); Stevens v. State, 458 So.2d 726, 729 (Miss. 1984). Moreover, where there is conflicting evidence on the admissibility of a confession, this Court will not disturb the court's findings "unless it appears clearly contrary to the overwhelming weight of the evidence." Wiley v. State, 465 So.2d 318, 320 (Miss. 1985); Gavin, 473 So.2d at 955. See also Coulter v. State, 506 So.2d 282 (Miss. 1987).
No one factor is dispositive in the totality of circumstances test. Intoxication or sickness does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication. See Hemingway v. State, 483 So.2d 1335, 1336 (Miss. 1986). In Kemp v. State, 352 So.2d 446, 448 (Miss. 1977) law officers testified that the appellant had been drinking heavily but that he was in control of his faculties, justifying the admission of the confession. In another case, although the defendant was intoxicated, the court decided there was ample evidence to justify the finding that he was in full command of his faculties, that his intoxication was less than mania, that he fully understood and appreciated what he way saying, and that his statements were free and voluntary. Moore v. State, 237 So.2d 844, 849 (Miss. 1970).
In sum, the record reflects substantial evidence supporting the Circuit Court's finding that Johnson was competent at the time of his confession and that it was freely, voluntarily and knowingly given. Law enforcement officers prudently waited a full twenty-four hours after Johnson's arrest before questioning him. This was more than ample time for Johnson to "sober up" and recover possession of his faculties. The assignment of error is denied.

VI.
Johnson next argues that the Circuit Court erred in overruling his motion for a mistrial and to permit him to undergo psychiatric examination and evaluation to determine his competency to stand trial.
Here we are not confronted with a pre-trial competency motion, as is ordinarily the case. Rather, counsel points to Johnson's outburst at trial as a manifestation of Johnson's unstable mental and emotional condition. In reaction to the testimony of Inspector Anderson, Johnson rose from the table, exclaimed "You lying son of a bitch," and fell to the floor in a semiconscious state.
Assuming that competency to stand trial is a matter that may be tested at any time during trial, we find the test by which competency is measured set forth in several recent opinions. See, e.g., Gammage v. State, 510 So.2d 802, 803 (Miss. 1987); Caylor v. State, 437 So.2d 444, 447 n. 1 (1983); Emanuel v. State, 412 So.2d 1187, 1189 (Miss. 1982); see also Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).
The record fails to reflect any substantial showing by Johnson of lack of competency. Specifically, Johnson failed to show that his mind was so clouded that he could not remember and intelligently relate what had occurred on July 7, 1987, nor is there evidence that he was unable to assist his attorney in the preparation for and presentation to the court of his defense. The evidence in the record before us reflects that the Circuit Court was well within its discretion when it overruled and denied Johnson's mis-trial competency motion. This assignment of error is denied.

VII.
Johnson next argues that the Circuit Court erred when it denied his motion for a mistrial made on grounds that evidence had been presented to the jury suggesting that Johnson had been guilty of an unrelated crime.[2] Under this assignment *1366 of error Johnson complains about the testimony of Bonny Wilson and his girlfriend Deborah Boler. Wilson and Boler, it will be recalled, each testified to seeing L.V. Johnson in the vicinity of Mrs. Eubanks' home about 2:45 a.m. prior to the rape. Johnson believes that one could infer from their testimony that Appellant Johnson "had committed some other crime and was certainly up to no good by being in their house." He objects specifically to Wilson's reply to the D.A.'s question of whether Wilson had seen Johnson earlier that night. Wilson replied: "Yes, sir. He was in my house." The Circuit Court found no inference of another crime within the testimony of Boler and Wilson and denied the motion.
The record reflects that L.V. Johnson, himself, on direct examination, testified that he had gone into a house he thought to be vacant but which turned out to be Bonny Wilson's. Johnson stated that when he woke up "there was a guy [Bonny Wilson] standing over me, had a stick in his hand, and asked me what I was doing in there... . He [Wilson] just talking about calling the police while I was talking. So, I just left."[3]
There is another reason why this testimony was permissible. There are several well-established exceptions to the rule that evidence of other crimes may not be admitted. One of those exceptions is the circumstance where such evidence is necessary to establish the identity of the offender. Lockett v. State, 459 So.2d 246, 253 (Miss. 1984); Neal v. State, 451 So.2d 743, 759 (Miss. 1984); Floyd v. State, 166 Miss. 15, 35, 148 So. 226, 230 (Miss. 1933).
Armstead v. State, 503 So.2d 281 (Miss. 1987) sheds light on the issue. In Armstead the defendant/appellant, relying on Hughes v. State, 470 So.2d 1046 (Miss. 1985), complained that the prosecution's questions about his alleged adulterous escapades induced the jurors to convict him on factors extraneous to the charges in his indictments. Distinguishing Armstead from Hughes, this Court observed that the "escapades" complained of were first explored by the defendant himself; this Court denied his assignment of error. Armstead held that "a defendant is not prejudiced by testimony concerning his behavior prior to the indictment in question where he himself testifies to that behavior." 503 So.2d at 284; Butler v. State, 375 So.2d 1039, 1041 (Miss. 1979).
Given the State's careful limiting of answers of Boler and Wilson to yes or no, the prior introduction of the damaging information by Defendant Johnson himself, and the relationship between the objected to testimony and the identity of the offender, the Circuit Court was well within its authority in denying a motion for mistrial. The assignment of error is denied.

VIII.
Johnson presents a related assignment of error. He argues that the Circuit Court erred when it overruled his objection to that portion of his confession which contained admissions by him of two unrelated crimes. At trial the Circuit Court at first sustained Johnson's objection to the breaking and entering part of his confession and ordered it deleted from his statement, subject to it later becoming admissible for purposes of identity, scheme or design. Later after Johnson in his own testimony discussed the breaking and entering, the Circuit Court restored the confession in its entirety. He commented as follows:
... The defendant took the stand, himself, and testified that he entered the home of Bonny Wilson. So if there has been an interjection into the trial of this case of another crime committed that night, it was introduced into the testimony by the defendant himself. So, now he cannot complain of that same crime being developed additionally through a statement that he had given.
*1367 Under the circumstances and consistent with our holding stated in Section VII above, we hold this assignment of error without merit and it is denied.

IX.

A.
Finally, Johnson argues that the verdict returned by the jury is contrary to the overwhelming weight of the evidence. Although there is a certain fuzziness to the point, Johnson appears to be arguing that the evidence is legally insufficient to undergird a verdict of guilty and, as well, is challenging the weight of the evidence.
On the former point, we have reviewed the evidence, summarized in Part II of this opinion above, and tested it according to familiar limitations upon our scope of review. When so viewed, we have no doubt that the evidence is legally sufficient to sustain a verdict of guilt on the principal charge of rape. See, e.g., Wetz v. State, 503 So.2d 803, 808-09 (Miss. 1987); Harveston v. State, 493 So.2d 365, 370-73 (Miss. 1986); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).

B.
Under our practice, the Circuit Court in its discretion may grant a new trial if it deems such required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Such a motion is addressed to the sound discretion of the Circuit Court. As a natural corollary of this rule, we will reverse the Circuit Court's denial of a new trial only where we are convinced that it has abused its discretion. McCullum v. State, 487 So.2d 1335, 1339 (Miss. 1986); Malone v. State, 486 So.2d 360, 366 (Miss. 1986).
The verdict that Johnson was guilty of rape was well within the evidence. The Circuit Court was well within his discretion in denying the motion for a new trial. Shive v. State, 507 So.2d 898, 900-01 (Miss. 1987); Russell v. State, 506 So.2d 974, 976-77 (Miss. 1987). This assignment of error is denied.

X.
We have also reviewed the evidence regarding the recidivism feature of the proceedings below. We find it established without contradiction that
(1) on February 21, 1978, Johnson was adjudged by the Circuit Court of Neshoba County, Mississippi, guilty of the crime of armed robbery and sentenced to serve a term of seven years in the State Penitentiary, and
(2) on September 29, 1983, Johnson was adjudged by the Circuit Court of Neshoba County, Mississippi, guilty of the crime of forgery and was sentenced to serve a term of eight years in the State Penitentiary, and
(3) on September 29, 1983, Johnson was adjudged by the Circuit Court of Neshoba County, Mississippi, guilty of the crime of grand larceny and was sentenced to serve a term of five years in the State Penitentiary, this latter sentence to run concurrently with that imposed on the forgery charge described above.
Miss. Code Ann. § 99-19-81 provides that a person convicted of a felony who has previously been convicted of two separate felonies arising out of separate incidents at different times and who shall have been sentenced to separate terms of one year or more, shall, for the principal offense, be sentenced to the maximum term of imprisonment prescribed therefor and that
such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The maximum term of imprisonment for the crime of rape for which Johnson was convicted is life imprisonment, and that, indeed, is the sentence imposed by the jury. Miss. Code Ann. § 97-3-65(2) (Supp. 1985). The sentence imposed upon Johnson was, therefore, that required by law.
CONVICTION OF RAPE AND SENTENCE OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. *1368 LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The fact of this second rape was withheld from the jury at trial.
[2] This case was tried in October of 1985. This and other evidentiary points were and are controlled by our law as it existed prior to the advent of the Mississippi Rules of Evidence, effective January 1, 1986.
[3] Nothing in the record suggests that this testimony by Johnson was an attempt to rebut or explain any evidence offered by the prosecution. Accordingly, nothing said here disturbs our rule that no waiver occurs where a party suffers an overruled objection and then tries the rest of his case on the assumption that the trial court's ruling will not be disturbed. See Stringer v. State, 500 So.2d 928, 946 (Miss. 1986); Jones v. State, 461 So.2d 686, 702 (Miss. 1984).