# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-01097-SCT

*GREGORY TODD DUNN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | AUGUST 9, 1994 |
| TRIAL JUDGE: | HON. HENRY LACKEY |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID O. BELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT ALLRED, III |
| DISTRICT ATTORNEY: | HONORABLE LAWRENCE W. LITTLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/5/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Gregory Todd Dunn was tried in the Circuit Court of Calhoun County on a six-count indictment. He was charged with (1) murder, (2) aggravated assault on a law enforcement officer, (3) aggravated assault on a law enforcement officer, (4) aggravated assault on a law enforcement officer, (5) aggravated assault, and (6) carrying a concealed weapon after conviction of a felony.

¶2. On August 9, 1994, the jury returned verdicts of guilty on Counts 1, 3, and 6; and not guilty on Counts 2, 4, and 5. The court, Honorable Henry L. Lackey, Circuit Judge, presiding, entered judgment and sentenced Dunn to a term of life imprisonment on Count 1, a term of thirty years imprisonment on Count 3, and a term of five years imprisonment on Count 6.

¶3. Dunn had court-appointed counsel with whom he would not cooperate. Due to this uncooperative conduct by Dunn, his attorneys requested the court to allow them to withdraw as

Dunn's counsel. The court required the attorneys to remain with Dunn through the entire trial to serve as his assistants. However, the attorneys did much more than just sit at counsel table. They made an opening argument, examined witnesses, entered objections, and made a closing argument. The trial was conducted much like any other criminal trial. However, Dunn, aggrieved of the lower court's decision, appeals to this Court raising the following issue:

> **I. WHETHER DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS DENIED BY ALLOWING TRIAL COUNSEL TO WITHDRAW ON THE DAY OF TRIAL CREATING A HYBRID REPRESENTATION.**

## STATEMENT OF THE FACTS

¶4. Dunn had been dating Regina Blanch, the victim, and she had been trying to end the relationship. On June 29, 1993, Dunn went to see her at her sister's house where she was living at the time. An altercation ensued outside the home when Dunn and Blanch began arguing. Blanch began to run into the house when Dunn pulled a .22 caliber pistol and started shooting. One shot was fired outside the home. Blanch tried to shut the door to prevent Dunn's entrance into the home, but he pushed his way into the home. He shot Blanch no less than five times in the back while she was lying on the floor just inside the doorway. She died as a result of the gunshots. Dunn then turned the gun on Tom Williams, who had given him a ride to Blanch's house, but the gun would not fire. Dunn left the scene of the crime and was tracked to a nearby wooded area by police officers and dogs from the North Mississippi Narcotics Unit. Dunn fired shots at the officers, and Officer Richard Erickson returned fire. Erickson's K-9 partner attacked Dunn as the shots were fired. Dunn was apprehended by the officers.

¶5. On November 30, 1993, the Calhoun County Grand Jury returned an indictment against Gregory Todd Dunn. The indictment contained six counts: Count 1 was for murder; Count 2 was for aggravated assault on a law enforcement officer; Count 3 was for aggravated assault on a law enforcement officer; Count 4 was for aggravated assault on a law enforcement officer; Count 5 was for aggravated assault; Count 6 was for carrying a concealed deadly weapon.

¶6. Dunn was found to be indigent, and an attorney was appointed for him. That attorney was removed for reasons unimportant, and Robert Cooper was substituted as counsel. Dunn was first reported to the court as being uncooperative with his appointed attorney at his arraignment and hearing on bond. Dunn refused for Cooper to represent him and stated his intent to remain silent. Because of Dunn's unwillingness to cooperate, Cooper was not prepared to go forward with the trial. In fact, Cooper stated that Dunn would not discuss anything about the case with him. Dunn informed the court through Cooper that he did not wish for Cooper to represent him. Upon telling the judge at his arraignment hearing he intended to remain silent, the Honorable Kenneth Coleman instructed Dunn in the following manner:

THE COURT:

> You just remain silent and we'll bore right ahead then. . . .Court strongly suggests to you and recommends to you that you discuss with Mr. Cooper your defense, your situation, whether you intend to get another lawyer or whatever he might be of any assistance to you. Court has appointed him for that purpose, and the case is going to trial, and the Court has it for this day

certain. You can talk to Mr. Cooper; and if you need witnesses subpoenaed, this type thing, he's there to assist you. If you want to not talk to him, that's your privilege too.

We're going to go to trial; and the day it's tried if you tell me you don't want anybody to represent you; that you're going to remain silent, you can represent yourself or whatever you want to do; but Mr. Cooper is going to be at the counsel table with you. He will lend you any assistance you desire. He's available to do that at this time and will be.

But I'm not going to allow you to stand before this Court and by saying that you're going to remain silent, you're not going to manipulate the docket of this court; and you're certainly not going to manipulate me, so however you want to handle it; but Court has appointed you a lawyer; and if you desire not to make any use of it, that's your right and privilege. He's there available to you, very competent, very capable to help you and assist you.

As I told you before, I am not going to allow you to manipulate me and manipulate this docket. The case will be tried; so you can decide how you're going to handle it then now.

¶7. The State proceeded with Dunn's arraignment and attempted to serve him with a copy of the indictment.

THE COURT: Do you have a copy of the indictment you can hand to him and let him look it over.

MR. COOPER: I have a copy I obtained from the clerk, your Honor.

THE COURT: Hand him a copy of the indictment.

MR. DUNN: How can he represent me?

THE COURT: I'm asking him to hand you a copy of the indictment. If you don't want to take it, don't take it.

MR. DUNN: I refuse.

¶8. The indictment was then read by the court to the defendant. The judge asked the defendant how he pled, whereupon, Dunn replied, "I remain silent."

¶9. A hearing was conducted in order to determine whether bond should be set. Randy Tutor, investigator with the North Mississippi Narcotics Unit, was called to testify. During his direct testimony, Cooper entered an objection based on hearsay. Cooper then conducted cross-examination of Tutor. Bond was denied, and Dunn was transported to the Lafayette County jail.

¶10. In May of 1994, Cooper made a motion before the court for additional counsel to be appointed as a result of Dunn's repeated requests that Cooper not represent him. This order was granted on June 2, 1994. James Minor was added to Dunn's court-appointed defense team. However, Dunn refused to discuss the facts of the case with Minor and indicated that he did not want his representation. Minor filed a motion to be removed as defense counsel on July 15, 1994. The record is void of a ruling on the motion.

¶11. On August 8, 1994, the day the trial was set to begin, Minor filed a motion for mental examination. The motion stated that neither Minor nor Cooper believed Dunn to be incompetent to stand trial. However, the motion was made so the trial court could either order an examination or determine on its own the competency of Dunn to stand trial. Lastly, the motion made a request that Minor be discharged from representation of Dunn, due to the lack of cooperation from Dunn.

¶12. In chambers before the trial began, Minor and Cooper both informed the judge that Dunn did not want them to represent him. Dunn was present and questioned by the court as to his understanding of his rights and the judicial process. Each time Dunn was asked for a response, he refused to answer. The judge informed Dunn there was only so much the court could do without his cooperation. The judge on the record commented that Dunn was alert but would not cooperate with his attorneys. The judge also stated that for an unknown reason Dunn refused to answer any of the court's questions. He conceded that it was Dunn's choice to remain silent, and the court would do nothing to force him into doing something.

¶13. The judge released Minor and Cooper from representation of Dunn. Dunn was then asked if he wanted to represent himself but gave no response. An offer for a plea was made by the State and communicated to Dunn. He again refused to answer. The defense attorneys both stated they had tried but could not adequately prepare because of Dunn's persistent lack of cooperation. Prior to leaving chambers, the judge explained the trial process to Dunn and instructed him that it was in his best interests to speak to Minor and Cooper. The judge informed Dunn that the court would not beg him to do anything for it was his right to remain silent.

¶14. Dunn spoke in chambers prior to the voir dire. There he stated, in effect, that he had remained silent throughout the proceedings against him and intended to continue to do so during the trial. He asserted the allegations against him were just that, and the State would have to prove every part of its case.

¶15. Cooper conducted voir dire of the jury venire for the defense. In chambers, Cooper made the defense's challenges and strikes of the venire during the panel selection. Before leaving chambers to seat the panel, Cooper informed the court that Dunn intended to take over his defense after the jury was seated. Cooper stated they would remain at Dunn's table. The court instructed Cooper to tell Dunn that they would be there to answer any questions he had. The judge then asked Dunn directly whether he wanted to take over his defense, but received no response. The judge informed Dunn that unless he responded, the attorneys were going to represent him because the court was having to rely on information not given directly by Dunn.

¶16. The defense counsel agreed to provide records and documents requested by Dunn. Minor made the opening statement for the defense. The judge inquired again of Dunn as to whether he wanted to represent himself. There was no response from Dunn. The judge informed Dunn that the court would be as lenient with him as possible. Also, Dunn was told that Minor and Cooper would be sitting at counsel table during the trial in order to assist him.

¶17. During the direct examination of Sherry Blanch by the State, Dunn made no objections. When the witness was tendered for cross-examination, Dunn declined to make inquiry of Sherry Blanch. Likewise, during the testimony of Joyce Blanch no objection was made by Dunn to questions asked by the State, nor did he cross-examine her.

¶18. Sheriff Billy Hitt, sheriff of Calhoun County at the time of the murder, was called by the State. Several times during the State's direct examination of Sheriff Hitt, Cooper made objections on the record. When the sheriff was tendered to the defense for cross-examination, Cooper informed the court that he was going to conduct the cross-examination for the defense in order to protect the rights of Dunn. The cross-examination was thoroughly conducted just as any other cross-examination by the defense would have been conducted.

¶19. The State called Stanley Sisk, an investigator with the Mississippi Highway Patrol, to testify on behalf of the State. During Sisk's testimony Cooper objected to the admission of certain exhibits, fingerprint evidence, and particular photos of the deceased. Upon Sisk being tendered to the defense, Minor cross-examined him.

¶20. Tom McGee was called to testify for the State. He was a pathologist at Grenada Lake Medical Center in Grenada. He was cross-examined by Cooper. Next, the State called John Dial, who was a criminalist at Jackson Police Department Crime Laboratory in Jackson, Mississippi. Cooper entered an objection on the record during Dial's direct testimony. He then cross-examined Dial.

¶21. Richard Erickson, who was a police officer with the K-9 unit from Tupelo, Mississippi, testified for the State. Cooper entered objections to certain questions on behalf of the defense. Minor cross-examined Erickson. The other K-9 police officer, Chuck Bunn, was called by the State. During his direct testimony objections were entered by Minor on behalf of the defendant. Minor then cross-examined Bunn.

¶22. Randy Tutor, who at the time of the murder was employed by the North Mississippi Narcotics unit as an investigator, was called by the State. His testimony was interrupted by objections from Cooper. Cooper cross-examined Tutor. With the jury out, Tutor was put back on the stand by the State. The defendant had left the court room, but the State informed the court that it would not proceed without the defendant present. During the redirect of Tutor, Minor objected to the admission of an identification card issued by the Department of Corrections.

¶23. After the State rested, Cooper moved for individual directed verdicts on each count contained in the indictment. Cooper and the State engaged in oral argument regarding each count before the judge as to why or why not the motion should be granted. The judge overruled each motion.

¶24. Dunn instructed Minor and Cooper to recall to the stand both Sherry and Joyce Blanch. This was against the advice of Minor and Cooper, but the court noted it was Dunn's right to demand those witnesses be recalled. Joyce Blanch was questioned on direct examination by Minor. The direct examination of Sherry Blanch was conducted by Cooper. During the cross-examination of Sherry Blanch by the State, Cooper objected to one of the State's questions.

¶25. Cooper informed the court the defense was prepared to rest, but wanted to be sure that Dunn had been made aware of his right to testify. The court then instructed Dunn as to this right; however, he refused to respond to the court. The attorneys stated before the court and on the record that Dunn had failed to provide them with any witnesses to aid in his defense.

¶26. Cooper participated in compiling the instructions to be given to the jury. During this process, Cooper objected to some of the State's instructions. Cooper worked with the State and the court

trying to reach agreements as to which instructions should be given. Cooper renewed his earlier motion for directed verdict, but it was refused by the court. Cooper moved the court, at the request of Dunn, to have the courtroom cleared during the giving of instructions and closing arguments. This motion was also denied.

¶27. Cooper made part of the defense's closing argument. Then Dunn gave the remainder of the defense's closing argument. The jury asked a question of the judge during deliberations.[1]Cooper stated that he could not object when the jury had already been instructed to that effect.[2]The jury returned a verdict of guilty as to the murder of Regina Blanch, of the aggravated assault on Officer Erickson, and of the concealed weapons charge. Cooper and Minor filed a Motion for J.N.O.V. or, in the Alternative, Motion for New Trial. This motion was refused.

¶28. Aggrieved of the lower court decision, Dunn appeals to this Court. Despite both attorneys, Minor and Cooper, remaining with Dunn throughout the trial, he raises the following issue:

> **II. WHETHER DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS DENIED BY ALLOWING TRIAL COUNSEL TO WITHDRAW ON THE DAY OF TRIAL CREATING A HYBRID REPRESENTATION.**

**DISCUSSION OF THE ISSUE**

**¶29.** Dunn argues to this Court that he was indigent and the trial court erred in dismissing his court appointed counsel on the day of the trial. In *Scott v. Illinois*, 440 U.S. 367, 374 (1979), the Supreme Court held "that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." "Absent a valid waiver of this right, '[i]f an uncounseled defendant is sentenced to prison, the conviction itself is unconstitutional.'" *United States v. Haymer*, 995 F.2d 550, 552 (5th. Cir. 1993); *United States v. Eckford*, 910 F.2d 216, 218 (5th Cir.1990); *United States v. Follin*, 979 F.2d 369, 376 (5th Cir.1992).

¶30. The State responds to Dunn's arguments on appeal with four arguments. First, the State claims that Dunn's claim on appeal is procedurally barred due to his failure to present the error to the trial court. Second, the trial court properly denied the motion for a mental evaluation of Dunn to determine whether he could represent himself. Third, Dunn specifically requested to represent himself. Fourth, Dunn could not have been denied his right to counsel because the attorneys sat at his counsel table and took a participatory role in the trial which constituted a permissible "hybrid representation."

### 1.Procedural Bar-

¶31. Dunn argues that the trial court erred in relieving counsel from responsibility of representing him at trial and erred in appointing Dunn as his own counsel. Dunn claims he never requested to represent himself. However, as the trial proceeded with the two attorneys at counsel table taking a participatory role in the trial, Dunn never raised an objection or voiced his opposition to what was taking place. He sat idly by, remaining silent, and watched it take place. "Under Mississippi law, an appellant is not entitled to raise a new issue on appeal, since to do so prevents the trial court from

having an opportunity to address the alleged error." ***Crowe v. Smith***, 603 So. 2d 301, 305 (Miss. 1992); *see* ***Duplantis v. State***, 644 So. 2d 1235, 1247 (Miss. 1994).

¶32. The State recognizes this Court's reluctance to apply a procedural bar to an ineffective assistance of counsel claim. ***Read v. State***, 430 So. 2d 832, 837 (Miss. 1983). There the Court stated that fundamental rights were exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal. ***Id.*** In ***Read***, this Court "noted that the failure to assign the lack of effective assistance of counsel at trial was not a procedural bar to the subsequent raising of the question of ineffective counsel either on appeal or in subsequent post-conviction relief proceedings." ***Smith v. State***, 434 So. 2d 212, 218 (Miss. 1983).

¶33. This Court's holding in ***Read*** is controlling, which means there is no procedural bar to an appellant raising for the first time on appeal that his right to counsel under the Sixth Amendment was denied. Therefore, the State's first argument is without merit.

### 2. Denial of Motion for Mental Evaluation-

¶34. The motion filed by Minor on the first day of trial was entitled "Motion For Mental Examination." In the motion counsel stated Dunn had expressed his desire that neither of his court appointed counsel represent him and he would represent himself. Neither attorney felt that Dunn was incompetent to stand trial, but they made the motion so the judge could order a mental evaluation or make an independent determination as to Dunn's competency to stand trial.

¶35. The trial judge ruled:

> The motion of the attorneys for psychiatric examination to determine whether or not he is competent to waive counsel, I don't believe is needed. It's overruled. The motion if [sic] overruled. I don't believe its' needed to find as a matter of fact that he is competent to stand trial.

> Because of the serious nature of the crimes with which his is charge [sic], I am to [sic] going to discharge the attorneys. The case is set for trial, and we'll proceed in that, with trial.

The judge made his own independent determination as to Dunn's ability to stand trial. He required both attorneys to remain at the counsel table to answer his questions, to assist him, and to do the best they could to protect his constitutional rights.

¶36. The State contends the motion encompassed both Dunn's ability to stand trial and his ability to waive his right to the assistance of counsel and to represent himself. In the trial below the State directed the court's attention to ***Godinez v. Moran***, 509 U.S. 389 (1993). There the United States Supreme Court stated "[a] criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel. . .unless he does so 'competently and intelligently.'" ***Id.*** at 396. "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" ***Id.*** (*quoting* ***Dusky v. United States***, 362 U.S. 402 (1960).

¶37. The Supreme Court spoke directly as to what is required of a defendant to waive his right to

counsel in *Godinez*.

> [T]here is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights. . .[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. . . .[W]e held that a defendant choosing self-representation must do so "competently and intelligently," but we made it clear that the defendant's "technical legal knowledge" is "not relevant" to the determination whether he is competent to waive his right to counsel, and we emphasized that although the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored. . ."

> . . .In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.

*Godinez*, 509 U.S. at 399-400 (internal citations omitted).

¶38. In the case at bar the trial judge denied the motion for a mental examination stating there was no need for one. This was a decision that was within the discretion of the trial judge. *Johnson v. State*, 511 So. 2d 1360, 1365 (Miss. 1987). There is no abuse of discretion in denying a mental evaluation where there has been no proof presented to the judge. *Wheeler v. State*, 536 So. 2d 1347, 1354 (Miss. 1988). When the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, this Court will not overturn that finding unless the finding was manifestly against the overwhelming weight of the evidence. *Laney v. State*, 486 So. 2d 1242, 1244-45 (Miss. 1986).

¶39. Both of Dunn's court-appointed attorneys stated in the Motion for Mental Examination they did not feel as though Dunn was incompetent to stand trial. The trial judge observed Dunn's actions and demeanor in chambers and in the courtroom. The trial judge noted that Dunn was alert and understood the nature of the proceedings and the circumstances and consequences. Later, the trial judge commented as to his perception of Dunn. "The record will reflect that the defendant is dressed nicely. I wish we had a video camera. He's clean, has a nice suit and shirt on, appears to be intelligent and apparently understands what's taking place."

¶40. We find that the correct result was reached by the trial judge when he denied the motion for mental examination. The trial judge was certainly in a position to observe Dunn and his demeanor. Dunn participated in his defense by making decisions to remain silent, recall witnesses for testimony, and make a closing argument. There was no need for a separate mental examination.

### 3. Dunn's Request for Self-Representation-

¶41. There were numerous occasions during the court proceedings where Dunn's appointed attorneys stated to the court that Dunn had refused to have them represent him and he wished to represent himself. These statements were made in Dunn's presence. He had the capacity to object or refute the statements by the attorneys but did not say anything.

¶42. Dunn at no time gave any indication that what the attorneys were saying was not true or that he disagreed with those statements. In fact the judge asked him if he wanted to represent himself. Dunn refused to answer. Specifically the following exchange took place:

> MR. COOPER: Your Honor, the defendant informed me that after the jury is seated that he would take over the defense of his own case; and I will advise the jury of that in opening statement.
>
> * * *
>
> THE COURT: Mr. Dunn, let me ask you this: Is that your request that you take over your defense?
>
> THE DEFENDANT: (No Response).
>
> THE COURT: If you don't want to respond now, I'm going to let these lawyers defend you because I don't know. What I'm hearing is from someone else and not from you.
>
> MR. COOPER: Your Honor, let the record reflect that the defendant requested that I advise the Court of that fact, which my statement earlier is the reason I brought that up.

Under these circumstances, the trial judge was fully justified in taking Dunn's silence as admissions of his attorney's recitals. *Graves v. State*, 627 So. 2d 360, 361 (Miss. 1993); *see Folk v. State*, 576 So. 2d 1243, 1246 n. 4. (Miss. 1991).

### 4. Hybrid Representation-

¶**43.** Dunn claims that when the court dismissed the two attorneys, it created a "hybrid representation." Because he sat mute and did in no way represent himself, Dunn asserts that the actions by the trial judge deprived him of his Sixth Amendment right to counsel. This Court has discussed "hybrid representation" in *Metcalf v. State*, 629 So. 2d 558 (Miss. 1993).

> Hybrid representation is considered to encompass both the participation of the defendant in the conduct of his trial when he has not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant is defending pro se. Courts commonly refer to the role of the attorney in a situation in which a defendant has not effectively waived assistance of an attorney as that of "co-counsel." The role of the attorney in a situation where the defendant has effectively waived counsel and is proceeding pro se is that of "stand by" or "advisory" counsel. The former tends to involve a more active role in the representation of the defendant than the latter.

*Id.* at 562.

¶44. In the case sub judice Dunn requested to represent himself. The trial court instructed both Cooper and Minor to remain at counsel table and do their best to protect Dunn's constitutional rights. Although Dunn was to take over afterwards, Minor made the opening argument for the defense. Dunn did not object or cross-examine either of the State's first two witnesses. In order to ensure his rights were protected, beginning with Sheriff Hitt, Cooper and Minor began to conduct the defense

of Dunn by objecting on the record during the State's direct examinations and by cross-examining the State's witnesses. Dunn did not refuse or object to their actions. Cooper and Minor still consulted with Dunn about decisions such as cross-examining witnesses, recalling witnesses, whether to testify, and make a closing argument.

¶45. Dunn enumerates the factors this Court considers in deciding whether the trial judge granted hybrid representation.

> These factors include: the defendant's accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point of the request, including both substantive and procedural aid.

*Metcalf*, 629 So. 2d at 565.

¶46. Looking at the factors individually it is clear to see that Dunn was not deprived of his right to counsel. First, both attorneys were at Dunn's counsel table during the entire trial. There is no question that Dunn had accessibility to counsel. Second, Dunn had consulted with Cooper and Minor before the trial on several occasions. Their efforts were met with Dunn's uncooperative attitude and disposition. So uncooperative was Dunn toward his court-appointed attorneys, they were unable to prepare his defense in a normal manner. As a result, Cooper and Minor filed a formal motion with the court in which they requested to be removed as lead counsel for Dunn. Third, Dunn requested a participatory role in his defense while in chambers before the trial began. However, he did not actively participate. He merely sat and refused to respond to questions from the court. This prompted the active participation from Cooper and Minor in an attempt to protect Dunn's constitutional rights. Fourth, Dunn wanted to take over his defense after Minor made the opening argument before the jury. However, Dunn only spoke in front of the jury during closing argument. Fifth, the judge repeatedly questioned both attorneys to ensure Dunn had been informed of his rights at trial. He further instructed the attorneys to inform Dunn they would be at counsel table and would assist him in any way possible. In an attempt to make certain Dunn was apprised of all his rights and accessibility to counsel, the judge told him the attorneys would remain at his table throughout the trial proceedings. Sixth, the attorneys began the trial much like co-counsel to Dunn. They began by making an opening statement to the jury. However, when it became apparent Dunn was content to sit by and do nothing, the attorneys represented Dunn vigorously during the remainder of the trial proceedings.

¶47. This Court in *Metcalf* wrote of its displeasure of defendants who would use their right to refuse counsel in an attempt to play a "cat and mouse" game with the court, or as some strategy to place the trial judge in a position where "in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of Counsel." *Metcalf*, 629 So. 2d at 563-64; *quoting Evans v. State*, 273 So. 2d 495 (Miss. 1973). In his preliminary hearing, Dunn was informed by Judge Coleman that he would not intimidate the court, and he needed to consult with his attorney. However, Dunn did not heed this warning or any of the other pleas by the court to encourage Dunn's cooperation with his attorneys. He should not be able to manipulate the court by refusing to

cooperate with his attorneys and the court. The trial court, without error, granted Dunn a permissible hybrid representation.

## CONCLUSION

¶48. We hold that Dunn was not deprived of his right to counsel. This Court has stated, "A defendant cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel. Such a doctrine would lead to absurd results." ***Johnson v. State***, 631 So. 2d. 185, 190 (Miss. 1994); ***Corley v. State***, 536 So. 2d 1314, 1318 (Miss. 1988); ***Evans***, 273 So. 2d at 498. The attorneys were at Dunn's side during the entire judicial proceedings against Dunn. They aggressively and vigorously represented Dunn when it became apparent he was not going to take a more active role in his representation. Under difficult circumstances, it appears from our reading of the record that the trial judge and all of the attorneys involved performed competently, while ensuring none of Dunn's constitutional rights were violated. Therefore, Dunn's argument is without merit and the lower court conviction is affirmed.

**¶49. COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT III: CONVICTION OF AGGRAVATED ASSAULT UPON A LAW ENFORCEMENT OFFICER AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VI: CONVICTION OF CARRYING A CONCEALED WEAPON AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR.**

1. If the jury is hung on one count, does it affect the others?

2. Instruction No. S-1.

> THE COURT instructs the jury that the defendant, Gregory Todd Dunn, has been charged in a six-count indictment with the following crimes, to-wit: Murder under Count I, Aggravated Assault on a Law Enforcement Officer under Count II, Aggravated Assault on a Law Enforcement Officer under Count III, Aggravated Assault on a Law Enforcement Officer under Count IV, Aggravated Assault under Count V, and Carrying a Concealed Deadly Weapon under Count VI.

> You must consider each count of the indictment separately as to the law and the evidence and you must return a separate verdict on each count of the indictment.