# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00246-SCT

*SHANNON PAUL BAGGETT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/1999 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | STONE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM DAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | HON. CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/27/2001 |

**BEFORE BANKS, P.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from the Stone County Circuit Court, following a jury trial in which Shannon Paul Baggett was found guilty of murder. Following Baggett's arrest and arraignment, the trial court ordered a mental evaluation and treatment for Baggett. A psychiatrist who examined him opined that Baggett did not understand the implications of his statements and was incompetent when he waived his rights. Baggett moved to suppress two tape-recorded statements he made following his arrest. After the trial court denied Baggett's motions to suppress, he filed a notice of insanity defense. Following three days of trial, the jury found Baggett guilty of murder, and he was sentenced to life in prison. The circuit court denied Baggett's motion for a new trial or in the alternative JNOV. Baggett timely filed his notice of appeal to this Court raising five issues:

> **I. WHETHER THE COURT ERRED IN NOT SUPPRESSING BAGGETT'S ILLEGALLY OBTAINED STATEMENTS BECAUSE OF HIS INTOXICATION DURING THE FIRST STATEMENT AND BECAUSE THE SECOND STATEMENT WAS ONLY AN ATTEMPT TO LEGITIMIZE THE FIRST STATEMENT?**

> **II. WHETHER THE COURT ERRED DURING THE TESTIMONY OF JEAN RAPP BY NOT ALLOWING HER TO GIVE HER LAYMAN'S OPINION AS TO BAGGETT'S ABILITY TO KNOW RIGHT FROM WRONG AT THE TIME SHE WAS HAVING A CONVERSATION WITH HIM, WHICH WAS CLOSE TO THE TIME THE CRIME OCCURRED?**

> **III. WHETHER THE COURT ERRED IN ALLOWING PHOTOGRAPHS, EXHIBITS S-**

**1, S-4, AND S-5 INTO EVIDENCE?**

**IV. WHETHER THE COURT ERRED IN ALLOWING ANY OF THE STATE INSTRUCTIONS INCLUDING JURY INSTRUCTION S-4 (THE VOLUNTARY INTOXICATION INSTRUCTION) WHICH VIOLATED LEE V. STATE, 403 So. 2d 132 (MISS. 1990) AND WHETHER THE ERROR WAS COMPOUNDED BY THE COURT'S REFUSAL TO GIVE D-15 WHICH WAS THE RESPONSE TO THE STATE'S S-4?**

**V. WHETHER THE ERRORS COMMITTED AT TRIAL, IF NOT INDIVIDUALLY, CUMULATIVELY REQUIRE REVERSAL?**

Finding no reversible error by the trial court, we affirm.

## FACTS

¶2. Baggett and his girlfriend, Donna Timmons, were at Baggett's grandmother's home when he became enraged and attacked Timmons. Baggett's grandmother, Marie Baggett, witnessed the entire encounter. Baggett strangled, beat, kicked, and stomped Timmons, and stabbed her over 80 times with a screwdriver. Baggett gave a statement saying he then took mercy on her because she was suffering and retrieved a knife from the kitchen with which he stabbed her approximately ten times. Timmons died as a result of her injuries.

¶3. The State called numerous witnesses whose testimony established chronologically the events surrounding the murder. Russell Bodie, who had seen Baggett and Timmons earlier that day, and the grandmother who witnessed the murder both testified. The law enforcement officers who investigated the murder and the physician who performed the autopsy all testified.

¶4. The State also introduced into evidence two tape-recorded statements made by Baggett to officers the day after the murder. At the pretrial suppression hearing, the trial judge concluded the statements were admissible either as voluntary statements or as statements made after a knowing, voluntary waiver of rights under *Miranda.*

¶5. On the issue of insanity, Baggett offered the testimony of psychiatrist Dr. James Rusch. He also attempted to offer the testimony of his mother, Jean Rapp, but the court limited her testimony, as is discussed in the second issue. Baggett did not testify in his own defense. The State called forensic psychiatrist Dr. Henry Maggio in rebuttal.

¶6. The jury found Baggett guilty of murder, and the trial judge sentenced him to life in prison.

## ANALYSIS

**I. WHETHER THE COURT ERRED IN NOT SUPPRESSING BAGGETT'S ILLEGALLY OBTAINED STATEMENTS BECAUSE OF HIS INTOXICATION DURING THE FIRST STATEMENT AND BECAUSE THE SECOND STATEMENT WAS ONLY AN ATTEMPT TO LEGITIMIZE THE FIRST STATEMENT?**

¶7. The determination that a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the

overwhelming weight of the evidence. *Wilcher v. State*, 697 So. 2d 1087,1095 (Miss. 1997) (citing *Balfour v. State*, 598 So. 2d 731, 742 (Miss. 1992)). Once the trial judge has determined that a confession is admissible, the defendant has a heavy burden in attempting to reverse that decision on appeal. *Crawford v. State*, 716 So. 2d 1028, 1037 (Miss. 1998); *Sills v. State*, 634 So. 2d 124, 126 (Miss. 1994).

¶8. Baggett contends his two statements should have been suppressed. First, he claims intoxication prevented him from being able to waive his *Miranda* rights prior to the first tape- recorded statement made at 1:40 a.m. after the murder. Baggett cites the U.S. Supreme Court case of *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140-41, 89 L.Ed.2d 410 (1986), as requiring that such a waiver "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Baggett challenges the veracity of the police officers' testimony that they never smelled alcohol even though he had been drinking heavily the day of the murder and since he was drinking a beer when the first officer arrived at the home. However, the police chief testified that he attributed Baggett's slurred speech to the fact that he was extremely emotional and crying during the interrogation. Additionally, Baggett points to the difference in the first signature and the second signature as indicative of intoxication, and also claims his responses in the first interview, as reflected in the transcript and on the tape, clearly show his intoxication. Baggett also denied any memory of signing the waiver.

¶9. This Court has held that "[i]ntoxication . . . does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication." *O'Halloran v. State*, 731 So. 2d 565, 571 (Miss. 1999). *See also Johnson v. State*, 511 So. 2d 1360, 1365 (Miss. 1987); *Hemingway v. State*, 483 So. 2d 1335, 1336 (Miss. 1986); *Stevens v. State*, 458 So. 2d 726 (Miss. 1984); *Kemp v. State*, 352 So. 2d 446 (Miss. 1977); *Moore v. State*, 237 So. 2d 844 (Miss. 1970); *State v. Williams*, 208 So. 2d 172 (Miss. 1968). Three officers testified at the suppression hearing about Baggett's appearance and actions the night of the murder. The arresting officer mentioned that Baggett had a beer in his hand when the officer arrived at the crime scene. On cross-examination of that officer, Baggett's attorney did not ask any questions about intoxication, except to just verify that Baggett had a beer in his hand. The jailer was asked only three questions about the possibility that Baggett was intoxicated, and responded that he did not recall any smell of alcohol or slurred speech, but that Baggett was crying and carrying on and very emotional. He also stated that Baggett said he'd been drinking all day. The third officer, on cross- examination, stated that he did not smell alcohol, and that Baggett did not appear to be under the influence of alcohol, although he was very emotional and crying. Two pictures were introduced at the hearing showing Baggett asleep on the "booking bench" still handcuffed, and the defense attorney asked the jailer "Did he [Baggett] eventually pass out or go to sleep there?" and the jailer responded that Baggett went to sleep.

¶10. The evidence before the trial court concerning the degree of Baggett's intoxication does not indicate such a degree of intoxication as to render the confession and the waiver involuntary. Under this high standard of review, there is insufficient evidence to reverse the trial court's decision as contrary to the overwhelming weight of the evidence.

¶11. Next Baggett argues that the second statement was merely a reiteration of the first and thus should also be excluded. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Baggett further argues the second statement is poisonous fruit of the first statement, that it contains "questions which reiterate or expound on information obtained during the first statement and for that reason should also be

excluded." Although Baggett spontaneously stated to several people to whom he talked the night of the murder that he had killed his "old lady because she was f------ around on him", there was no evidence that anyone asked him questions about what he had done without first properly advising him of his *Miranda* rights. The first statement was not illegally obtained; therefore, the second statement is not tainted. This assignment of error is without merit.

### II. WHETHER THE COURT ERRED DURING THE TESTIMONY OF JEAN RAPP BY NOT ALLOWING HER TO GIVE HER LAYMAN'S OPINION AS TO BAGGETT'S ABILITY TO KNOW RIGHT FROM WRONG AT THE TIME SHE WAS HAVING A CONVERSATION WITH HIM, WHICH WAS CLOSE TO THE TIME THE CRIME OCCURRED?

¶12. Baggett argues the circuit court erred in not allowing the testimony of Baggett's mother, Jean Rapp, concerning her lay person's perspective on his ability to distinguish right from wrong. A proffer was made of her testimony. It was Rapp's opinion, based on a telephone conversation she had with Baggett when he called her immediately after the murder, that he did not know the difference between right and wrong and could not appreciate the nature or consequence of his acts. The court allowed her to testify as to details of the the conversation but did not allow her to state the conclusion reflected in her opinion.

¶13. Baggett notes that this Court has held that "[w]hen the insanity defense is tendered, both expert testimony and lay testimony are admissible and useful." *Groseclose v. State*, 440 So. 2d 297, 301 (Miss. 1983). He argues that a lay witness should be allowed to express an opinion concerning a defendant's sanity when the witness has had a reasonably sufficient opportunity to observe the subject and has noted behavior reasonably indicative of an unsound mind and upon which he bases an opinion that the subject was, at the time of the observation by the witness, of unsound mind. Thus, Baggett contends Rapp's entire testimony should have been allowed because she had obviously known him his entire life and had sufficient opportunity to form an opinion based on the telephone conversation.

¶14. The State correctly counters that Baggett sought to have Rapp testify as to his ability to know right from wrong immediately after the crime had been committed and that such testimony should be limited to opinion based upon "observations and interpretations of those observations of a defendant prior to the incident of the specific crime." *Russell v. State*, 729 So. 781, 786 (Miss. 1997). Thus, the trial court did not err in limiting Rapp's testimony. This assignment of error is without merit.

### III. WHETHER THE COURT ERRED IN ALLOWING PHOTOGRAPHS, EXHIBITS S-1, S-4, AND S-5 INTO EVIDENCE?

¶15. We will not disturb a trial court's decision to admit photographs absent an abuse of discretion. *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995). Baggett argues the trial court did abuse its discretion by admitting photos of the victim and her wounds. He contends the photographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and identity of the deceased have been established. *Id.; Davis v. State*, 551 So. 2d 165, 167 (Miss. 1989).

¶16. The State contends there was a valid purpose for the admission of each exhibit into evidence. Exhibit S-1 was admitted into evidence in aid and support of a police officer's testimony as to the scene of the crime. The other two exhibits, S-4 and S-5, were admitted to support the testimony of an expert witness in

describing the circumstances of the killing and the details of the wounds. These were valid reasons for the trial court to admit the photos into evidence. Thus, the trial court did not abuse its discretion, and this assignment of error is without merit.

**IV. WHETHER THE COURT ERRED IN ALLOWING ANY OF THE STATE INSTRUCTIONS INCLUDING JURY INSTRUCTION S-4 (THE VOLUNTARY INTOXICATION INSTRUCTION) WHICH VIOLATED LEE V. STATE, 403 So. 2d 132 (MISS. 1990) AND WHETHER THE ERROR WAS COMPOUNDED BY THE COURT'S REFUSAL TO GIVE D-15 WHICH WAS THE RESPONSE TO THE STATE'S S-4?**

¶17. Bagget argues the trial court erred in allowing a jury instruction that voluntary intoxication is not a defense to a criminal act. The jury instruction reflected the rule in ***McDaniel v. State***, 356 So. 2d 1151 (Miss. 1978) and read as follows:

> The Court instructs the jury that voluntary intoxication is not a defense to a criminal act and therefore, if you believe from the evidence in this case beyond a reasonable doubt that the Defendant was intoxicated on October 3, 1998, and that this intoxication was voluntary on his part and if you further find beyond a reasonable doubt that the Defendant committed the acts charged herein, then you are hereby instructed that intoxication is no defense to said acts.

¶18. This Court held in ***Lee v. State***, 403 So. 2d 132 (Miss. 1990), that generally speaking a jury should not be instructed on the question of voluntary intoxication because such instructions can be confusing and misleading to the jury. Baggett claims such an instruction is particularly prejudicial in this case where he has raised both the insanity and manslaughter defenses and the defenses rest in part on his addiction to drugs or alcohol.

¶19. The State argues S-4 was a permissible instruction under ***McKnight v. State***, 738 So. 2d 312, 318-19 (Miss. Ct. App. 1999) (citing ***Davis v. State***, 684 So. 2d 643, 653 (Miss. 1996)). *See also* ***Norris v. State***, 490 So. 2d 839, 841-43 (Miss. 1986). A voluntary intoxication instruction is proper when the defendant has made intoxication an issue. The State notes that nearly all of Baggett's testimony dealt with his intoxication the day of the murder. The State also notes that S-4 was even modified at the request of defense counsel in order to alleviate some of his concerns. The trial court did not violate the ***Lee*** standard or abuse its discretion by giving a voluntary intoxication instruction in this case due to the facts surrounding the murder and the nature of Baggett's defense.

¶20. Baggett proposed instruction D-15 as a response to S-4. The proposed instruction (a copy of which is not in the record before this Court) apparently provided that Baggett's intoxication negated the specific intent required to find murder. The State contends proposed instruction D-15 was contrary to the law as declared in ***McDaniel***. There is no error in the denial of an instruction that contains an incorrect statement of the law. ***Evans v. State***, 725 So. 2d 613, 693 (Miss. 1997). The lower court enjoys considerable discretion regarding the form and substance of jury instructions. ***Rester v. Lott***, 556 So. 2d 1266, 1269 (Miss. 1990). The trial court did not abuse its discretion in giving jury instruction S-4 or in denying D-15. This assignment of error is without merit.

**V. WHETHER THE ERRORS COMMITTED AT TRIAL, IF NOT INDIVIDUALLY, CUMULATIVELY REQUIRE REVERSAL?**

¶21. Baggett contends that even if any of his assignments of error taken individually would be insufficient grounds for reversal, the cumulative effect of the trial court's errors deprived him of a fair trial and require reversal. *Mitchell v. State*, 539 So. 2d 1366 (Miss. 1989). Baggett is unable to present sufficient errors to constitute cumulative error.

## CONCLUSION

¶22. Baggett's assignments of error are each without merit. The judgment of the Circuit Court of Stone County is affirmed.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P. JJ., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR.**