# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00277-COA

**MELISSA CRUZ A/K/A MELISSA DAWN CRUZ**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS MELISSA CRUZ (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/14/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., J. WILSON, P.J., AND WESTBROOKS, J.

### J. WILSON, P.J., FOR THE COURT:

¶1.     Melissa Cruz killed her boyfriend, Larry Keith Phillips, by running over him in her truck on Old Highway 49 in Forrest County.  A short time later, Cruz confessed that she intentionally ran over Phillips following an argument earlier in the evening.  A jury found Cruz guilty of first-degree felony murder, Miss. Code Ann. § 97-3-19(1)(c) (Supp. 2019), for killing Phillips while engaged in the crime of aggravated domestic violence, and the circuit court sentenced her to life imprisonment.

¶2.     On appeal, Cruz argues that the jury should have been instructed on imperfect self-

defense and heat-of-passion manslaughter, that aggravated domestic violence cannot serve as the underlying felony in a prosecution for felony murder, and that her trial attorney's failure to request a felony manslaughter jury instruction constituted ineffective assistance of counsel. In addition, in a supplemental pro se brief, Cruz argues that her confession is not sufficient to sustain her conviction and that her confession should have been excluded due to intoxication at the time it was given.[1] We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Around 10:40 p.m. on July 1, 2016, Deputy Mike Harris of the Forrest County Sheriff's Department was notified of a report of a man walking down the middle of Old Highway 49. As Harris drove in that direction, he received another report that a man was lying in the middle of the road, unresponsive. When Harris arrived at the scene, he found a body lying on its side in the center of the road. Debris was scattered down the road, and the man's boots were found about 100 feet away from his body. The man had suffered severe injuries, including "road rash" covering much of his body and a deep laceration to his right arm, and his body was blue, indicating a lack of oxygen. A paramedic arrived on the scene and pronounced the man dead. The man was later identified as Larry Keith Phillips. No autopsy was ordered because the cause of death was apparent: massive internal injuries consistent with blunt force trauma from having been struck by a car.

¶4. Around the same time that Keith's body was discovered, Captain Chris Selman of the

_____

[1] In her pro se reply brief, Cruz raises yet another issue, arguing that the State charged her with aggravated domestic violence but failed to "prove her to be either Aggravated or Violent." However, issues raised for the first time in a reply brief are deemed waived. *Nelson v. State*, 69 So. 3d 50, 52 (¶8) (Miss. Ct. App. 2011).

Forrest County Sheriff's Office was monitoring traffic from a marked vehicle in the parking lot of a shopping center in Hattiesburg. A truck stopped near Selman's vehicle, and a woman got out and approach Selman's vehicle. Selman asked, "Can I help you?" The woman responded, "I just killed my boyfriend." Selman said, "Excuse me?" The woman then repeated that she had just killed her boyfriend. Selman testified that the woman did not appear to be emotional or upset, and nothing about her appearance suggested that she had been involved in a struggle or a fight. Selman then noticed that the hood of the woman's truck was caved in. Selman had just heard a call over his radio about a dead body in the road on Old Highway 49 about fifteen minutes from Selman's location. At that point, Selman started "putting two and two together." He handcuffed the woman and read her *Miranda* rights to her. The woman was later identified as Melissa Cruz.

¶5. Jeff Byrd, a crime scene investigator for the Hattiesburg Police Department, met Selman in the shopping center parking lot to take pictures of Cruz's truck. Byrd also testified that Cruz did not appear disheveled or as if she had been in a fight. Byrd observed that the front of Cruz's truck was damaged and that there appeared to be blood on the hood. After Cruz's truck was towed, Byrd proceeded to the crime scene on Old Highway 49. Byrd did not observe any skid marks or brake marks on the road that might have indicated that a vehicle had tried to stop suddenly.

¶6. Deputy John Tryner transported Cruz from the shopping center parking lot to the sheriff's office. Cruz was calm and quiet. A little after midnight on July 2, Tryner read Cruz her *Miranda* rights, and she signed a waiver confirming that she understood her rights. Cruz

3

remained calm and conversational. She told Tryner that she and Phillips had argued earlier in the evening at the Rusty Bucket, a bar south of Hattiesburg. They left the Rusty Bucket together. Cruz was driving, and they continued to argue. Phillips insisted on getting out of the truck, so Cruz stopped on the side of Old Highway 49 and let Phillips out. Cruz then went back to the Rusty Bucket. She drank about half a beer before leaving again. She drove back toward where she had left Phillips. She told Tryner that she saw Phillips in the road walking away from her and that she "put [her] truck in low and just ran him down."

¶7. Cruz then gave a written statement. She stated that she and Phillips had gone to the Rusty Bucket to meet some friends and play pool. She said they had not been out recently because they had been having very heated arguments. Cruz said that as Phillips drank more that night, his personality changed, and he became jealous of other men in the bar. He accused Cruz of flirting with another man. Even after Cruz and Phillips left the bar, Phillips continued to call Cruz names and accused her of sleeping with the other man. As they drove down Old Highway 49, Phillips said that he wanted to get out of the truck, so Cruz stopped on the side of the road and let him out. She then returned to the Rusty Bucket and drank half a beer before leaving again. She wrote, "I wanted to calm down a bit and I couldn't feel things would get better." Cruz stated that she was "afraid" of Phillips because he had previously talked about killing people and dealing drugs. She concluded her written statement as follows: "I started back down the road and knew it was going to be the worst it ever was before and couldn't stand the feeling in my gut how it was going to be. I saw him walking down the middle of the road hit the gas and ran him over."

4

¶8.    Investigator David Bassett responded to the crime scene and took photographs of a cell phone that was found in Phillips's pocket.  The photos show text messages that appear to be from Phillips to Cruz.  In those messages, Phillips cursed Cruz and called her a whore.  Bassett was also present for Cruz's interview.  Like Tryner, Bassett observed that Cruz was calm and unemotional during the interview and while she wrote out her statement.  Cruz did not say anything about physical abuse, but she did say that she was afraid of Phillips, that he was emotionally abusive, and that they had argued that night.  According to Bassett, Cruz only showed emotion when she realized that Phillips was dead and that she was going to prison.  Bassett testified that Cruz then gasped and said, "I meant it."

¶9.    Cruz was indicted for first-degree felony murder with the underlying felony of aggravated domestic violence.  *See* Miss. Code Ann. § 97-3-19(1)(c).  The State called nine witnesses at trial, including Harris, Selman, Byrd, Tryner, and Bassett, and Cruz's written confession was admitted into evidence.

¶10.   After the State rested, the defense called forensic scientist Alyssa Bailey.  Bailey had received Cruz's blood sample taken on the night of July 1 and tested it for the Forrest County Sheriff's Office.  Bailey testified that Cruz's blood-alcohol concentration (BAC) was .129% on the night of July 1.

¶11.   Nicole Rose, who was with Cruz and Phillips at the Rusty Bucket on July 1, 2016, testified that she had known Cruz for five years and met Phillips through Cruz, though she did not know him well.  At some point in the evening, Rose noticed that Cruz and Phillips appeared to be arguing.  However, Rose was playing in a pool tournament, so she did not

keep a constant watch on the couple. She said that both Cruz and Phillips were drinking, but she did not know how much. At one point, Rose realized that Cruz and Phillips were gone. About twenty minutes later, Cruz was back. Cruz told Rose that Phillips had tried to jump out of the truck while she was driving, so she stopped and let him out. Rose thought Phillips might come back, so she told Cruz to sit and have a beer. The next time Rose looked for Cruz, she was gone again. Rose tried to call Cruz, but there was no answer. Sometime after Cruz left, a man came in the bar and said that a man had been killed in an accident down the road. Rose next heard from Cruz around 2 a.m. on July 2, after Cruz had been arrested.

¶12. At the charge conference, defense counsel requested a jury instruction on imperfect self-defense. The State objected, arguing that there was no evidence that Cruz believed that she was in danger from Phillips when she ran him over. The trial judge agreed with the State and refused the instruction.

¶13. The jury found Cruz guilty of first-degree murder, and the court sentenced her to life imprisonment. Cruz then filed a motion for judgment notwithstanding the verdict or a new trial, which the circuit court denied, and a notice of appeal.

**ANALYSIS**

¶14. Cruz raises three issues through her appointed appellate counsel. First, she argues that the jury should have been instructed on imperfect self-defense and heat-of-passion manslaughter. Second, she argues that her conviction must be reversed because the State should not be allowed to use aggravated domestic violence as the underlying felony in a felony murder prosecution. Third, she argues that her attorney's failure to request a jury

6

instruction on felony manslaughter constituted ineffective assistance of counsel. Cruz also filed a supplemental pro se brief, in which she argues that her confession was not sufficient to support her conviction, that the State failed to prove the "corpus delicti" of the crime, and that her confession should have been suppressed because she was intoxicated at the time. We find no error and affirm Cruz's conviction and sentence.

## I.      Manslaughter Jury Instructions

¶15.    Cruz argues that the trial judge erred when he refused to instruct the jury on imperfect self-defense.[2] We review the grant or denial of jury instructions for an abuse of discretion. *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010). "[T]he instructions actually given must be read as a whole." *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.* "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely." *Evans v. State*, 797 So. 2d 811, 815 (¶11) (Miss. 2000) (quoting *Manuel v. State*, 667 So. 2d 590, 593 (Miss. 1995)). However, "[t]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence." *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009) (quoting *Phillipson v. State*, 943 So. 2d 670, 671 (¶6) (Miss. 2006)).

---

[2] Cruz also argues that the jury should have been instructed on heat-of-passion manslaughter. Miss. Code Ann. § 97-3-35 (Rev. 2014). However, Cruz "did not ask for, much less tender, a separate proposed heat-of-passion manslaughter instruction. Thus, [s]he is barred from first raising this issue on appeal." *Davis v. State*, 130 So. 3d 1141, 1145 (¶8) (Miss. Ct. App. 2013).

¶16. Cruz's proposed instruction read:

If Melissa Cruz killed Larry Keith Phillips with an actual, genuine belief that the killing was necessary in order to protect herself from great bodily harm or death, even though that belief was not reasonable under the circumstances, then the defendant did not have the mental requirement to commit murder. However, the killing may be manslaughter.

If you find from the evidence in this case that:

1. On or about July 1, 2016, Melissa Cruz struck Larry Keith Phillips with a car she was driving at the time, killing him;

2. Acting with an actual, genuine belief that the killing was necessary in order to protect herself from great bodily injury or death; but

3. That belief was not reasonable under the circumstances, then you may find Melissa Cruz guilty of the lesser included offense of Manslaughter.

The trial judge ruled that the evidence did not support the instruction because imperfect self-defense requires a bona fide (though objectively unreasonable) belief on the part of the defendant that self-defense was necessary. The trial judge found that there was nothing to suggest that Cruz had a bona fide or unfounded belief that her actions were necessary.

¶17. Cruz argues that the trial judge erred by refusing her proffered instruction. She notes that she and Phillips argued on the night of the murder and that Phillips sent her angry text messages. Cruz also relies on her own statements to law enforcement that she and Phillips had engaged in heated arguments prior to the night of the murder and that she was afraid of Phillips because he told her that he had killed people in the past. Cruz argues that the totality of the circumstances support her claim that she had a bona fide belief that killing Phillips was necessary to prevent him from seriously injuring or even killing her.

¶18. Imperfect self-defense is not a defense to a criminal act but only a circumstance that

8

may downgrade an intentional killing from murder to manslaughter. *Brown v. State*, 222 So. 3d 302, 307 (¶21) (Miss. 2017); *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015). "[U]nder the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown*, 222 So. 3d at 307 (¶21) (quoting *Ronk*, 172 So. 3d at 1126 (¶22)). In other words, there must be evidence that the defendant "*subjectively*" believed "in . . . her own mind" that she was in imminent danger of death or great bodily harm. *Id.* (quoting *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985)).

¶19. In this case, the trial judge found that there was no evidence from which a reasonable jury could find that Cruz had *any* belief that she was in such danger when she ran over Phillips. We agree. Cruz dropped Phillips off on the side of the road and went back to the bar for another beer. When she left the bar again, she drove back in the same direction, she saw Phillips walking down the middle of the road, and, in her own words, she "hit the gas and ran him over." Although Cruz and Phillips had a volatile relationship and argued shortly before the murder, there is nothing to suggest that Cruz, who was safely inside her truck, believed she was in any danger from Phillips, who was walking alone down the road. Indeed, Cruz never even articulated such a belief to law enforcement. She stated vaguely that she was "afraid" of Phillips because of statements he made about things he had done in the past. However, she never claimed that she ran him over because she believed that her life or safety was in danger. Because there was no evidence that Cruz had a bona fide belief that her actions were necessary to prevent death or great bodily harm, the trial judge properly

9

refused Cruz's proffered imperfect self-defense instruction. *Nelson v. State*, 284 So. 3d 711, 717-18 (¶¶20-26) (Miss. 2019) (holding that the trial judge properly refused an imperfect self-defense instruction because there was no evidence that the defendant subjectively believed that it was necessary to kill the victim).

## II. Aggravated Domestic Violence and Felony Murder

¶20. Cruz next argues that "[t]he crime of felony-murder under Mississippi Code Annotated Section 97-3-19(1)(c) should not apply where, as here, the predicate felony is the very assault that results in the killing."[3] She argues that if aggravated domestic violence can serve as the predicate felony for a felony-murder charge, then every aggravated assault that results in death will be first-degree murder. She further argues that this would improperly relieve the State of the burden of proving that the defendant acted with the deliberate design to effect death, as it ordinarily must in a first-degree murder case. *See* Miss. Code Ann. § 97-3-19(1)(a). Accordingly, she urges this Court to hold that the crime of aggravated domestic violence "merges" with the killing and cannot serve as the predicate felony for a felony-

---

[3] Under the *capital* felony-murder statute, a killing committed without authority of law and "with or without any design to effect death" shall be capital murder when it is committed "by any person engaged in the commission" of certain enumerated felonies—rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve, or nonconsensual unnatural intercourse with mankind—"or in any attempt to commit such felonies." Miss. Code Ann. § 97-3-19(2)(e). Likewise, a killing done without authority of law and "without or without any design to effect death" shall be *capital* felony murder when it is committed "by any person engaged in the commission of the crime of felonious child abuse and/or battery of a child . . . or in any attempt to commit such felony." *Id.* § 97-3-19(2)(f). The first-degree felony-murder statute under which Cruz was convicted picks up where the capital statutes leave off. It similarly provides that a killing without authority of law and "without any design to effect death" shall be first-degree murder when it is committed "by any person engaged in the commission of *any* felony" other than those felonies specifically listed in the capital statute. *Id.* § 97-3-19(1)(c) (emphasis added).

10

murder charge. Cruz acknowledges that Mississippi has declined to adopt such a "merger" doctrine, but she asks this Court to follow the decisions of courts in some other states that have such a rule.

¶21. In *Smith v. State*, 499 So. 2d 750 (Miss. 1986), our Supreme Court "decline[d] to adopt the merger doctrine and [held] that under our felony-murder statute the underlying felony does not merge into the murder." *Id.* at 754.[4] The underlying felony in *Smith* was a burglary, and the defendant argued that the burglary should "merge" into the murder because the burglary was "an integral part of the murder" on the facts of that case. *Id.* at 753. Specifically, the indictment alleged that the murder was the crime that the defendant intended to commit when he broke into and entered the dwelling. *Id.* at 754. Nonetheless, as stated, the Supreme Court declined to adopt the "merger doctrine" followed in some other states. *Id.* The Court stated that "[o]ur statutory provisions dealing with murder and the particular felony, in this case, burglary, are intended to protect different societal interests." *Id.*

¶22. Subsequently, in *Faraga v. State*, 514 So. 2d 295 (Miss. 1987), the Supreme Court extended *Smith*'s holding to a case in which felonious child abuse served as the predicate felony for a capital felony murder. *Id.* at 302-03.[5] Faraga specifically argued that "the merger doctrine should apply in his case because the underlying felony (felonious child abuse) was an aggravated battery necessarily included in the killing." *Id.* at 302. However, the Supreme Court rejected his argument. The Court stated that as in *Smith*, "the societal

---

[4] *Smith* applied the capital felony-murder statute. *See supra* note 3.

[5] *See supra* note 3.

11

interests are also different regarding our capital murder statute and our felonious child abuse statute. While the latter statute is intended to protect the child, the former statute is designed to punish and act as a deterrent to such crimes should death result." *Id.* at 303.

¶23. Finally, in *Stevens v. State*, 806 So. 2d 1031, 1044-45 (¶¶50-59) (Miss. 2001), the Supreme Court reaffirmed its holdings in *Smith* and *Faraga*. In *Stevens*, the defendant was charged with four counts of capital felony-murder with felony child abuse and burglary (breaking and entering with the intent to kill) serving as the underlying felonies. *See id.* at 1043, 1045 (¶¶48, 58). The Supreme Court reaffirmed that those underlying felonies do not merge into the murder. *Id.* at 1044-45 (¶¶50-59). Indeed, the Court stated that Stevens's merger argument was "totally without merit." *Id.* at 1045 (¶59).

¶24. Cruz's argument in the present case is indistinguishable from the arguments that the Supreme Court rejected in *Faraga* and *Stevens*. To borrow language from *Faraga*, our felony-murder statute and our domestic violence statute protect different "societal interests": "While the latter statute is intended to protect [victims of domestic violence], the former statute is designed to punish and act as a deterrent to such crimes should death result." *Faraga*, 514 So. 2d at 303. Accordingly, we must apply the felony-murder statute as it is written and uphold Cruz's conviction. *Id.*

¶25. Cruz nonetheless argues that *Smith*, *Faraga*, and *Stevens* are not controlling because they were decided before the Legislature amended section 97-3-19 to create a distinction between first-degree murder and second-degree murder. *See* 2013 Miss. Laws ch. 555, § 1 (S.B. 2377). To this end, Cruz cites Justice Robertson's concurring opinion in *Faraga*,

12

which noted that the "merger doctrine was developed almost exclusively by states whose statutory schemes, unlike Mississippi's, provided for degrees of murder." *Faraga*, 514 So. 2d at 312 (Robertson, J., concurring). According to Justice Robertson, "[c]ourts in those states feared obliteration of distinctions between killings if the law allowed assaultive conduct to become an underlying felony. This could result in all unexcused or unjustified homicides being elevated to first degree murder." *Id.* This is, of course, precisely Cruz's argument: that the first-degree felony-murder statute should not be used to make all assaultive conduct that results in death a first-degree murder or to relieve the State of its burden of proving deliberate design.

¶26. Although Justice Robertson noted what some courts in *other* states had "feared," the very next section of his opinion is more important for purposes of this case because it persuasively explains why Cruz's argument fails under Mississippi law. Justice Robertson explained:

> The point in the end is that our legislature has exercised its prerogative to define crimes and fix punishments. . . .
>
> The status of the victim as a child and the battery of the child are constituent elements of the single offense of capital murder the same as are "killing" and "without authority of law." The legislature having prescribed, among others, this definition of "capital murder," we are without authority to change it. Yet such a change is exactly what Appellant Faraga would have us accomplish in his argument regarding the merger doctrine.
>
> The argument for the application of the merger doctrine here founders as a matter of statutory interpretation . . . . The statute is valid because the legislature has the prerogative to define crimes and fix punishments and, subject only to limitations imposed by federal and state constitutions, we are not at liberty to interfere. Suffice it to say that there is no known constitutional limitation upon a state's prerogative to define as a crime the killing of a human

13

being while in the course of the act of felonious child abuse.

*Id.* at 313 (citation omitted).

¶27.    Justice Robertson's reasoning is on-point in this case. Mississippi Code Annotated subsection 97-3-19(1)(c) defines a killing done "without authority of law" and "without any design to effect death" as first-degree murder when it is committed "by any person engaged in the commission of *any* felony" other than those felonies specifically listed in the capital murder statute. Miss. Code Ann. § 97-3-19(1)(c) (emphasis added). Thus, except for those felonies covered by the capital statute, subsection 97-3-19(1)(c) applies broadly and without limitation to "any felony." *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008) (discussing the "naturally . . . expansive meaning" of "the word 'any'"). The Legislature certainly could make additional exceptions for other felonies—such as aggravated domestic violence—but it has never done so. Thus, under the plain language of the statute, a killing done "by any person engaged in the commission of" aggravated domestic violence "shall be first-degree murder." As Justice Robertson put it, "there is no known constitutional limitation upon a state's prerogative to define as a crime the killing of a human being while in the course of the act of [aggravated domestic violence]." *Faraga*, 514 So.2d at 313 (Robertson, J., concurring). Therefore, we are obliged to apply the statute as it written and are without authority "to change it." *Id.*[6]

------

[6] We also note that the Legislature has amended section 97-3-19 repeatedly since the Supreme Court decided *Smith*, *Faraga*, and *Stevens*, but the Legislature has never amended the statute to incorporate any sort of "merger doctrine." We presume that the Legislature is aware of judicial interpretations of statues. *Caves v. Yarborough*, 991 So. 2d 142, 153 (¶42) (Miss. 2008). And we further presume that the Legislature has "tacit[ly] adopt[ed]" prior interpretations of a statute when it reenacts or amends the statute without correcting the prior

### III.    Ineffective Assistance of Counsel

¶28.    Cruz next argues that her trial counsel provided ineffective assistance of counsel by failing to request a felony-manslaughter instruction under Mississippi Code Annotated section 97-3-27 (Rev. 2014).  She argues that because manslaughter is a lesser-included offense of murder, it necessarily follows that felony manslaughter is a lesser-included offense of felony murder.  Therefore, she argues that her trial counsel should have requested a felony-manslaughter instruction.[7]

¶29.    "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that she was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687.  Stated differently, "[t]he defendant must show that there is a reasonable

_____

interpretations.  *Id.* at 153-154 (¶43).  Therefore, we must also presume that the Legislature has "tacit[ly] adopt[ed]" the Supreme Court's decisions in *Smith*, *Faraga*, and *Stevens*.

[7] "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)).  We "will address such claims on direct appeal when '[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed.'" *Id.* (other brackets omitted) (quoting *Bell*, 202 So. 3d at 1242 (¶12)).  We may also address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The defendant "bears the burden of proving both prongs of *Strickland*, and [she] faces a rebuttable presumption that [her] attorney's conduct is within the wide range of reasonable conduct and that [her] attorney's decisions were strategic." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶30. Cruz was indicted and convicted under the first-degree felony-murder statute, which provides:

> The killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done without any design to effect death by any person engaged in the commission of any felony other than [those felonies listed in the capital murder statute].

Miss. Code Ann. § 97-3-19(1)(c). Cruz argues that her trial attorney should have requested a felony-manslaughter instruction. The felony-manslaughter statute reads:

> The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except those [felonies listed in the capital murder statute], . . . shall be manslaughter.

Miss. Code Ann. § 97-3-27.

¶31. In *Butler v. State*, 608 So. 2d 314 (Miss. 1992), Butler was charged with capital murder for causing the death of a child while engaged in the commission of the crime of felony child abuse and/or battery of the child. *Id.* at 315. At trial, she requested a jury instruction on felony manslaughter, which the court refused. *Id.* at 319.[8] She was then

---

[8] When *Butler* was decided the felony-manslaughter statute applied to the crime of felony child abuse. *Butler*, 608 So. 2d at 319. The statute was later amended to exclude

convicted of capital murder and sentenced to death. *Id.* at 320. On appeal, the Supreme

Court held that Butler was entitled to the instruction, but its holding was limited to capital

murder cases. *Id.* The Court first stated that the capital felony-murder statute and the felony-

manslaughter statute were "for all intents and purposes identical" because neither required

proof that the killing was intentional. *Id.* at 319-20. The Court then stated:

> It is well established that where there are two separate criminal statutes for the same offense, the State has a choice of deciding the statute under which to prosecute. It is also settled that in such cases the accused is *not* entitled to have the jury instructed on the statute carrying the lesser penalty. Identical offenses do *not* authorize lesser included offense instructions. We do *not* depart from these principles in the general run of criminal prosecutions.

*Id.* at 320 (emphasis added) (citations omitted). However, the Supreme Court held that

Butler should have received the manslaughter instruction because she had been indicted for

murder and was facing the death penalty. *Id.* The Court noted that Mississippi Code

Annotated section 99-17-20 (Supp. 1991) specifically provided that a judge in a *capital*

murder case "may grant an instruction for the [S]tate or the defendant which instructs the jury

as to their discretion to convict the accused . . . of an offense not specifically set forth in the

indictment[.]" *Id.* (quoting Miss. Code Ann. § 99-17-20).

¶32. In this case, of course, Cruz was not indicted for capital murder and was not facing

the death penalty. Therefore, under the general rule that our Supreme Court reaffirmed in

*Butler*, Cruz was not entitled to a felony-manslaughter instruction. *Id.* First-degree felony

murder and felony manslaughter "are for all intents and purposes identical" because neither

requires an intentional killing. *Id.* at 319-20. Therefore, under *Butler*, "the State ha[d] a

felony child abuse. 1994 Miss. Laws ch. 27, § 1 (S.B. 2009, 1st Extra. Sess.).

17

choice of deciding the statute under which to prosecute," and Cruz was not entitled as a matter of right to an instruction under felony manslaughter.

¶33. Cruz also points out that in 2004, the Legislature added the following language to section 99-19-5:

> For the purposes of this section, manslaughter shall be considered a lesser included offense of murder and capital murder, and the jury may be properly instructed thereon, upon request by either party or upon the court's own motion, in any case in which the giving of such instruction would be justified by the proof, consistent with the wording of the applicable manslaughter statute.

Miss. Code Ann. § 99-19-5(2) (Rev. 2015); *see* 2004 Miss. Laws ch. 393, § 3 (S.B. 2438).

¶34. However, this statute does not help Cruz's argument. While the statute's language does indicate that felony manslaughter should now be considered a lesser-included offense of felony murder, that does not mean that such an instruction would have been appropriate on the facts of this case. Indeed, the statute specifically states that a manslaughter instruction should be given only if it is "justified by the proof." And our Supreme Court has held that a lesser-included-offense instruction is appropriate only "if a 'rational' or 'reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense." *Downs v. State*, 962 So.2d 1255, 1261 (¶28) (Miss. 2007) (quoting *Monroe v. State*, 515 So. 2d 860, 863 (Miss. 1987)); *accord Jones v. State*, 281 So. 3d 137, 145 (¶20) (Miss. Ct. App. 2019). Based on the proof presented in this case, no rational jury could have found Cruz "*not* guilty of [felony murder], yet guilty of [felony manslaughter]." *Downs*, 962 So. 2d at 1261 (¶28) (emphasis added). As discussed above, the two crimes "are for all intents and purposes identical" because neither requires an

18

intentional killing. *Butler*, 608 So. 2d at 319-20. Therefore, no rational jury could have convicted Cruz of one but not the other. Accordingly, Cruz was not entitled to a felony-manslaughter instruction under *Butler* or section 99-19-5. It follows that her trial attorney's failure to request such an instruction was not ineffective assistance of counsel.

### IV. Corpus Delicti

¶35. In her supplemental pro se brief, Cruz argues that the State did not establish the corpus delicti of the charged crimes and that her confession alone was not sufficient to sustain her conviction. She does not challenge the fact that a death occurred but instead argues that the State did not establish the criminal agency requirement for conviction.

¶36. "Corpus delicti is defined as the body or substance of the crime." *Cotton v. State*, 675 So. 2d 308, 313 (Miss. 1996). "To establish the corpus delicti in a homicide case, there must be proof of (1) death of a human being and (2) a criminal agency causing that death." *Hodge v. State*, 823 So. 2d 1162, 1165 (¶11) (Miss. 2002). The Supreme Court has stated "that a defendant's confession that is not corroborated by independent evidence of the corpus delicti is insufficient to support a felony conviction." *Id.* at 1166 (¶12). The purpose requiring corroboration between the evidence and the confession is "to reduce the risk of a defendant being convicted of a crime never committed." *Cotton*, 675 So. 2d at 313.

¶37. Cruz's argument is totally without merit. She confessed to the murder, in great detail, orally and then again in writing. In addition, independent evidence corroborated her confession. Phillips was found dead in the middle of Old Highway 49, the severe injuries that he had sustained made it clear that he had been run over by a vehicle, and the damage

to Cruz's truck indicated that it was the vehicle.

### V. Confession

¶38.   Finally, Cruz argues that the trial judge erred by not suppressing her confession despite the fact that she had an elevated BAC when she waived her *Miranda* rights and confessed.  She essentially argues that the waiver of her *Miranda* rights was involuntary because she was intoxicated at the time.  Cruz's trial counsel moved to suppress her confession for essentially the same reason. Three law enforcement officers and Cruz's friend Nicole Rose testified at the suppression hearing.

¶39.   Selman testified that when Cruz approached him in the parking lot and told him that she had killed her boyfriend, she was steady on her feet and did not trip or stumble.  He also stated that her driving was normal—she was not driving too fast or too slow.  Selman did not smell any alcohol coming from her person, nor did he notice slurred speech.  In his opinion, Cruz seemed calm and collected.

¶40.   Tryner and Bassett also testified that Cruz was calm throughout their encounter. Neither officer noticed any reason to suspect that Cruz was incapable of understanding her *Miranda* rights.  Her conversation with them seemed normal.  They testified that Cruz did not have any difficulty reading the waiver form or understanding her rights as they were read to her.  Tryner testified that on other occasions, he had decided not to interview a suspect because he thought that the suspect have might been intoxicated.  But he went ahead with Cruz's interview because she was seemingly normal and compliant.

¶41.   Rose testified that Cruz was drinking beer at the Rusty Bucket before Phillips was

killed. According to Rose, Cruz arrived at the Rusty Bucket around 6:30 or 7 p.m. Rose estimated that Cruz had five to seven beers while she was there. Rose testified that Cruz seemed "okay" and was not slurring her words or falling off her chair. She stated that Cruz was "upset" and "flustered" when she came back to the bar after her fight with Phillips.

¶42. The trial judge denied Cruz's motion, finding that "just because you're impaired to drive a vehicle under the laws of the State of Mississippi, doesn't mean you're impaired insofar as your ability to understand, discern, and voluntarily waive your rights and make a statement." The judge also noted that Cruz's handwritten statement was well written and organized and that neither officer who took her statement felt that she was unable to understand and subsequently waive her *Miranda* rights.

¶43. We will not reverse a trial judge's ruling that a confession is voluntary and admissible unless the trial judge applied the wrong legal standard, manifestly erred, or made findings that are against the overwhelming weight of the evidence. *Baggett v. State*, 793 So. 2d 630, 633 (¶7) (Miss. 2001). "Once the trial judge has determined that a confession is admissible, the defendant has a heavy burden in attempting to reverse that decision on appeal." *Id.* Whether a *Miranda* waiver was made voluntarily, knowingly, and intelligently is a factual question for the trial court and is based on the totality of the circumstances. *Taylor v. State*, 94 So. 3d 298, 307 (¶21) (Miss. Ct. App. 2011).

¶44. A waiver of *Miranda* rights must be "made voluntarily, knowingly and intelligently." *Brown v. State*, 983 So. 2d 1059, 1066 (¶28) (Miss. 2008) (quoting *Coverson v. State*, 617 So. 2d 642, 647 (Miss. 1993)). "[A] waiver is voluntary if it is the product of a free and

21

deliberate choice rather than intimidation, coercion or deception." *Id.* at 1066-67 (quotation marks omitted). "[A] waiver is knowing and intelligent if it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 1067 (quotation marks omitted). "[I]ntoxication does not automatically render a confession involuntary. The admissibility of the confession depends on the degree of intoxication." *Baggett*, 793 So. 2d at 634 (¶9) (ellipsis omitted) (quoting *O'Halloran v. State*, 731 So. 2d 565, 571 (¶18) (Miss. 1999)).

¶45. The trial judge did not err by denying Cruz's motion to suppress. Three law enforcement officers testified that nothing about Cruz's demeanor or appearance indicated that she was intoxicated or impaired, let alone to the point that she could not voluntarily, knowingly, and intelligently waive her rights. Her speech was not slurred, and she did not smell of alcohol. She was calm and conversational during all of her interactions with law enforcement. She listened as Tryner read her rights aloud, and she initialed next to each right and signed the waiver form without difficulty. In addition, as the trial judge noted, Cruz's written statement was organized, cogent, detailed, and legible. Cruz's only witness at the suppression hearing, Nicole Rose,[9] estimated that Cruz drank five to seven beers while she was at the Rusty Bucket. However, even Rose could not say that she thought Cruz was "drunk." In addition, although we do not know precisely when Cruz finally left the Rusty Bucket, it was at least two hours before she signed her *Miranda* waiver and gave her oral and written statements. Given the totality of the evidence presented to the trial judge, we cannot

---

[9] Cruz did not testify at the suppression hearing.

say that he manifestly erred by finding that Cruz's *Miranda* waiver and statements were voluntary, knowing, and intelligent.

## CONCLUSION

¶46. Cruz has identified no error in her trial or her conviction for first-degree felony murder. Therefore, her conviction and sentence of life imprisonment are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**